560 So.2d 1334 (1990)
HYSTER COMPANY, a Nevada Corporation, Appellant,
v.
Charles D. STEPHENS and Annie Stephens, His Wife, Appellees.
No. 89-264.
District Court of Appeal of Florida, First District.
May 3, 1990.
Rehearing Denied June 11, 1990.
*1335 Charles Cook Howell, III, of Commander, Legler, Werber, Dawes, Sadler & Howell, P.A., Jacksonville, for appellant.
Stephen J. Pajcic, III, and Michael B. Wedner, of Pajcic & Pajcic, P.A., Jacksonville, for appellees.
SMITH, Judge.
Hyster appeals a final judgment entered pursuant to a jury verdict awarding the Stephens a total of $700,000.00 damages in their product liability suit, as well as an amended judgment taxing costs. The Stephens based their complaint below upon the theory that there were design and manufacturing defects in the transmission of a forklift manufactured by Hyster, and that as a result of these defects, Mr. Stephens was injured. Finding no reversible error, we affirm.
Charlie Stephens and Mack Moreland were coemployees working for David Concrete. Moreland, while operating a Hyster forklift, exited the machine with the motor still running in order to help Stephens with a block. Moreland thought he had placed the top gear shift in neutral when he disembarked, but the forklift unexpectedly began to move forward and one of the forks pierced Stephens' leg.
The owner's and operator's manual for the Hyster forklift warns that before leaving the truck, the operator should lower the carriage completely, apply the parking brake, shut off the engine, and put the truck in gear. Moreland had not lowered the forks all the way to the ground, only to about knee level. Further, Moreland did not apply the parking brake, because it was not working. Brad Davis, Jr., former manager of David Concrete, testified that the parking brakes in the Hyster forklifts were burning out because the operators would put on the parking brake when they got off of the forklift and when they got back on, would put the lift in gear, forgetting about the brakes, thereby burning them up. Accordingly, David Concrete had instructed its drivers not to use the parking brake, but to lower the forks to the ground when they disembarked, so that contact between the load and the ground would act as a brake. Also, he testified that the drivers had been instructed to leave their machines running if they were getting off for only a short period of time. Turning the lifts on and off, even though the driver was off for a short period of time, would require monthly or weekly replacement of starters. However, Davis admitted that he was aware that Hyster's operator manual recommended *1336 the use of the parking brake and turning the engine off when the operator disembarked.
In support of their theory of liability, the Stephens introduced the testimony of a qualified expert engineer, Dr. Surosky, who demonstrated to the jury how the Hyster transmission worked. He testified that there was a design defect in the rod linkage and valve spool, resulting in an unstable connection between the rod and valve, which allowed the rod to wear or gouge a large egg-shaped hole in the valve spool. There were also defects in the design of the valve spool itself. These defects created a condition which allowed the transmission of the forklift to move out of neutral, or what appeared to be a neutral position of the gear shift lever, and into gear.
Regarding the defect in the manufacturing of the production rod, Dr. Surosky testified that it was essential that the rod be very smooth and meet rigid specifications. A rough rod would result in increased filing action and more damage to the valve spool. However, upon comparison of a number of production rods received from Hyster, Dr. Surosky discovered a wide variation in the rods, some with very rough ends. He concluded that a similar rough end must have been in the forklift which injured Stephens to cause the extensive damage to the valve spool, thereby allowing the transmission of the forklift to jump into gear. Dr. Surosky opined, accordingly, that the defective design and manufacture of the forklift caused the accident. The jury obviously agreed with Dr. Surosky's version of the accident.
On appeal, Hyster argues that even if there was a defect in its product the trial court should have directed a verdict for Hyster because the combined negligence of the owner (David Concrete) and the operator (Mac Moreland) was so egregious that it constituted an unforeseeable, independent, intervening cause of the accident as a matter of law. Problems with the forklift were reported to David Concrete; but David Concrete failed to keep the forklift properly tuned and repaired, and failed to report the problems to Hyster. Moreover, Moreland failed in almost every respect to follow the applicable safety regulations when he disembarked from the forklift. Hyster argues that these acts were unforeseeable, and that they absolve Hyster from liability for its product defect.
Hyster's contentions on appeal demonstrate the existence of genuine factual issues to be considered in the determination of liability on its part. As the Stephens correctly point out, however, there was contrary and conflicting evidence in the record as to whether the negligence of the owner and operator constituted independent, intervening causes of the accident, and whether their alleged negligence should have been foreseen. Significantly, there was evidence that difficulties with this particular forklift began shortly after it was delivered to David Concrete; and it can be argued that such difficulties, occurring in a brand new machine, cannot logically be blamed on a lack of maintenance. Moreover, there was some evidence that forklifts are typically used in a manner not unlike the way this forklift was operated, and that Hyster knew or should have known the manner in which its machine would be used. There was evidence that this forklift jumped into gear even when the forks were lowered. Thus, from these and other facts and circumstances concerning the machine and its use, it is evident that a jury issue existed whether a design defect in this case was the cause of Stephens' injuries, and whether any owner or operator negligence contributing to the accident was foreseeable. Cassisi v. Maytag Co., 396 So.2d 1140 (Fla. 1st DCA 1981); Martinez v. Clark Equipment Company, 382 So.2d 878 (Fla. 3d DCA 1980).
Next, Hyster argues that counsel for the Stephens made improper and prejudicial remarks in final argument which require reversal. However, we find that only Hyster's complaint about opposing counsel's "cover-up" argument merits discussion. On this point, Hyster relies on Carnival Cruise Lines v. Rosania, 546 So.2d 736 (Fla. 3d DCA 1989), in which the court granted a new trial in a personal injury *1337 action based upon the closing argument of plaintiffs' counsel who disparaged the manner in which the corporate defendant defended the action, accusing the corporate defendant of "hiding the truth" and "putting up roadblocks." Here, in closing argument, plaintiffs' counsel alluded to actions by Hyster during the trial preparation phase of the case which he characterized as a "cover-up." There was no objection. Hyster responded to the cover-up argument, and queried the jury whether or not plaintiffs were covering up concerning another point. The fact that both counsel used questionable judgment in their closing arguments does not mean that a new trial should not be ordered if it is otherwise required. Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985). Here, while we question both counsels' use of the phrase "cover-up" in closing arguments, we do not think that these arguments plumbed such depths of impropriety as occurred in the Borden case. In Borden, counsel professed to have personal knowledge of the corporate defendant's nefarious activities which were not only not in evidence, but did not in fact exist. We are of the view that when the entire closing arguments in this case are considered, these relatively minor references to a "cover-up" were not so prejudicial as to unduly influence the jury.
Finally, Hyster maintains that the trial court erred in taxing as costs an excessive expert witness fee, and an expert witness fee for a witness whose testimony was not offered at trial. With respect to the award of costs for the expert, Hume, who did not testify at trial, we note that Hume's deposition was taken and that it is in the record on appeal. Rule 1.390(c), Florida Rules of Civil Procedure, as recently amended for clarification, 536 So.2d 974, at 983 (Fla. 1988), provides that an expert witness whose deposition is taken shall be allowed a witness fee in such reasonable amount as the court may determine, and that any reasonable fee paid to an expert or skilled witness "may be taxed as costs." Thus, Hyster's reliance on In Re: Statewide Uniform Guidelines for Taxation of Costs in Civil Actions (Adopted 1981), see Florida Rules of Court (West Pub.Co. 1989), is misplaced. Concerning Hyster's contention that the award of an expert witness fee to Dr. Surosky was excessive, we point out that a transcript of the cost hearing is not in the record on appeal. Without the transcript, which was Hyster's burden to provide, we are without the benefit of the evidence the trial court considered in arriving at its award of costs. Finding that appellant has not demonstrated that the trial court abused its discretion in the award of costs, we affirm on this point as well. See, Siebert v. City of Vero Beach, 555 So.2d 983 (Fla. 4th DCA 1990).
Hyster's remaining points concern various evidentiary rulings of the trial court and are found to be without merit. The admission of evidence is a matter within the sound judicial discretion of the trial judge, whose decision in that regard must be viewed in the context of the entire trial. Division of Corrections v. Wynn, 438 So.2d 446, 448 (Fla. 1st DCA 1983). When the trial court's evidentiary rulings are considered in this manner, we find that the trial judge did not abuse his discretion in these rulings.
AFFIRMED.
ZEHMER and MINER, JJ., concur.